THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| XMISSION, L.C.,<br><br>              Plaintiff,<br><br>v.<br><br>GLOBAL WIDE MEDIA, INC. and DOES 1–10,<br><br>              Defendant2. | **MEMORANDUM DECISION AND ORDER GRANTING [8] DEFENDANT'S MOTION TO DISMISS**<br><br>Case No. 2:22-cv-00177-DBB<br><br>District Judge David Barlow |

XMission, L.C. brought this suit against Global Wide Media, Inc. ("Global Wide") for violation of the federal CAN-SPAM Act and breach of contract.[1] Global Wide moved to dismiss counts two and five of the complaint for failure to state a claim.[2] For the reasons stated below, Global Wide's motion to dismiss is GRANTED.

## BACKGROUND

XMission is a Utah-based internet service provider that, in 2015, previously entered into a settlement agreement with Global Wide related to spam emails that Global Wide sent to XMission domains.[3] In the agreement, Global Wide agreed that it would not knowingly send emails to XMission domains.[4] The agreement also included a provision providing Global Wide

---

[1] *See* Complaint, ECF No. 2, filed Mar. 16, 2022
[2] *See* GlobalWide Media Inc.'s Motion to Dismiss Counts Two and Five of XMission, L.C.'s Complaint ("Motion to Dismiss"), ECF No. 8, filed May 16, 2022.
[3] *See* Complaint at ¶ 70.
[4] *Id.* ¶ 74.

with notice and opportunity to cure in the event XMission received future emails after the parties executed the settlement agreement.[5]

XMission alleges that it continued to receive emails from Global Wide and provided Global Wide with notice of these emails in 2016.[6] It further alleges that, after the cure period described in the settlement agreement expired, it again began receiving emails from Global Wide and has received 52,566 emails since the end of the cure period.[7] As a result, XMission brought this suit in March 2022 for breach of contract and violation of the federal CAN-SPAM Act.[8] Global Wide now moves to dismiss counts two and five of the complaint on the basis that XMission failed to state a claim.[9]

## STANDARD

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when the complaint, standing alone, is legally insufficient to state a claim on which relief may be granted.[10] Each cause of action must be supported by sufficient, well-pleaded facts to be plausible on its face.[11] In reviewing a complaint on a Rule 12(b)(6) motion to dismiss, the court accepts all well-pleaded ("that is plausible, non-conclusory, and non-speculative")[12] facts as true and draws all reasonable inferences from the pleadings in favor of the nonmoving party.[13] But

---

[5] *Id.* ¶ 76–77.
[6] *Id.* ¶ 78–79.
[7] *Id.* ¶ 80–81.
[8] *Id.* ¶¶ 38–85.
[9] *See* Motion to Dismiss.
[10] Fed. R. Civ. P. 12(b)(6).
[11] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[12] *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 836 (10th Cir. 2020) (quoting *Dudnikov v. Chalk & Vermilion Fine Arts Co.*, 514 F.3d 1063, 1070 (10th Cir. 2008)).
[13] *Wasatch Equality v. Alta Ski Lifts Co.*, 820 F.3d 381, 386 (10th Cir. 2016).

the court disregards "assertions devoid of factual allegations" that are nothing more than "conclusory" or "formulaic recitation[s]" of the law.[14]

## DISCUSSION

Global Wide argues that the court should dismiss two of XMission's claims. First, Global Wide argues that XMission fails to state a claim for breach of contract in count five. Second, Global Wide argues that XMission fails to state a claim for violating 15 U.S.C. § 7704(a)(2) in count two.

**I. Global Wide's motion to dismiss count five is granted because XMission does not allege that Global Wide refused to confess to liquidated damages before XMission brought suit.**

Global Wide makes two arguments for dismissal of XMission's breach of contract claim. First, it argues that XMission fails to state a claim because it has not alleged that Global Wide "knowingly" sent emails to XMission addresses.[15] And second, it argues that XMission fails to state a claim because it has not alleged that it complied with the notice and cure provision in the parties' settlement agreement.[16]

The settlement agreement between XMission and Global Wide states that Global Wide "will not knowingly send, or knowingly cause to be sent by any other party, any email message . . . to any email address with any of the XMission Domains."[17] Global Wide argues that the complaint fails to allege that Global Wide "knowingly" sent any emails, and thus XMission has

---

[14] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009).
[15] Motion to Dismiss at 7.
[16] *Id.* at 8.
[17] Settlement Agreement at § 5, ECF No. 8-1, filed May 16, 2022.

failed to state a claim for breach of contract because it has failed to state an essential element of the claim.[18]

XMission makes the following allegations in its complaint. It alleges that Global Wide had a list of XMission's domains since 2015 when it executed the settlement agreement[19] and that after the parties entered the settlement agreement XMission continued to receive Global Wide emails.[20] It further alleges that, in March 2016, XMission provided copies of the emails to Global Wide pursuant to the notice provision in the agreement[21] and that, after the cure period expired, XMission again began to receive emails from Global Wide.[22] XMission alleges that it has received at least 52,566 emails from Global Wide since the cure period expired.[23] It also alleges that these emails were "sent and/or initiated by [Global Wide] acting in its capacity as agents for advertisers"[24] and that Global Wide "transmitted the emails pursuant to contract with advertisers for pay or other consideration."[25] Finally, it alleges that Global Wide has "knowingly taken actions, or failed to act, in manners that ha[s] directly caused harm to XMission in Utah . . . through the sending of thousands of commercial emails into the state either directly or through their agents."[26]

---

[18] *See Am. W. Bank Members, L.C. v. State*, 342 P.3d 224, 230–31 (Utah 2014) ("The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages.").
[19] Complaint at ¶ 73.
[20] *Id.* ¶ 78.
[21] *Id.* ¶ 79.
[22] *Id.* ¶ 80.
[23] *Id.* ¶ 81.
[24] *Id.* ¶ 25.
[25] *Id.* ¶ 26.
[26] *Id.* ¶ 6.

Accepting XMission's factual allegations as true and granting all reasonable inferences from the pleadings in favor of XMission,[27] XMission has sufficiently pled that Global Wide knowingly sent emails to XMission domains. XMission alleges that Global Wide had a list of XMission's domains, that Global Wide had notice of violative emails, and that XMission continued to receive emails from Global Wide after the expiration of the cure period. It is a reasonable inference from these allegations that Global Wide knew that it was sending emails to XMission domains.

Next, Global Wide argues that XMission fails to state a claim for breach of contract because "XMission fails to allege it complied with the Agreement's notice and cure provision."[28] The settlement agreement releases "any and all claims . . . with respect to (a) [emails sent from Global Wide to XMission domains as of November 30, 2015], (b) any email, whether known or unknown, [that included certain redirect links], through and including [November 30, 2015], sent to any email address containing a XMission Domain . . . and (c) any costs, attorneys' fees or expenses incurred with respect to the claims identified herein and in pursuit of the resolution of the claims."[29]

> The settlement agreement also included the following notice and cure provision:
>
> GWM agrees it will not knowingly send, or knowingly cause to be sent by any other party, any email message ("Future GWM Email") to the [sic] any email address with any of the XMission Domains . . . after the Effective Date. . . . Notwithstanding the foregoing, if XMission receives any Future GWM Email, . . . then it may provide un-redacted copies of each such email to GWM pursuant to the notice procedures in this Agreement . . . . In the event XM decides to notify GWM of the Future GWM Email, GWM shall then have ten (10) full business days to investigate and cure ("Cure Period") the sending of emails to XMission during which time

---

[27] *Wasatch Equality v. Alta Ski Lifts Co.*, 820 F.3d 381, 386 (10th Cir. 2016).
[28] Motion to Dismiss at 8.
[29] Settlement Agreement at § 2.

> XMission shall not initiate any claim or lawsuit respecting the Future GWM Emails it received. If, and only if, XMission continues to receive emails after the expiration of the Cure Period, GWM confesses to a liquidated damages sum in the amount of $25 per email received after the Cure Period and XMission shall forgo all right to sue GWM for such email(s) upon receipt of payment in full. . . . Further, if XMission continues to receive emails after expiration of the Cure Period and GWM does not confess to a liquidated damages sum as outlined above, then XMission may pursue all rights and remedies available to it.[30]

The parties disagree on the interpretation of the notice and cure provision—Global Wide argues that this provision provides for perpetual opportunities for notice and cure[31] while XMission argues that notice and opportunity to cure was a one-time right.[32]

But the court need not reach that question, because the notice and cure provision of the agreement includes another requirement: that XMission give Global Wide the opportunity to confess to liquidated damages before XMission brings suit. The agreement states: "if XMission continues to receive emails after expiration of the Cure Period *and GWM does not confess to a liquidated damages sum as outlined above*, then XMission may pursue all rights and remedies available to it."[33] As such, XMission may bring suit for breach of this provision only after Global Wide does not confess to liquidated damages of $25 per email.

In its complaint, XMission has not alleged that Global Wide refused to confess to a liquidated damages sum before XMission brought suit. As such, XMission has not alleged the existence of a condition precedent to its ability to sue Global Wide for breach of contract. Thus,

---

[30] *Id.* § 5.
[31] Motion to Dismiss at 9.
[32] XMission's Opposition to Global Wide Media's Motion to Dismiss ("Opposition") at 11, ECF No. 14, filed June 1, 2022.
[33] Settlement Agreement at § 5 (emphasis added).

6

it has failed to state a claim for breach of contract.[34] Count five of the complaint is dismissed without prejudice.

### II. Global Wide's motion to dismiss count two is granted because XMission fails to state a claim.

XMission's second cause of action is for violation of the CAN-SPAM Act, 15 U.S.C. § 7704(a)(2). Section 7704(a)(2) states that:

> It is unlawful for any person to initiate the transmission to a protected computer of a commercial electronic mail message if such person has actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that a subject heading of the message would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message (consistent with the criteria used in enforcement of section 45 of this title).[35]

As an initial matter, Global Wide contends that claims under § 7704(a)(2) are subject to the heightened pleading requirement of Federal Rule of Civil Procedure 9(b).[36]

Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[37] No court in the Tenth Circuit has addressed whether the heightened pleading requirements of Rule 9(b) apply to claims brought under the CAN-SPAM Act, but the Tenth Circuit has noted that Rule 9(b) is triggered when the claim at issue is "premised on fraud."[38] In *Schwartz v. Celestial Seasonings, Inc.*, the Tenth Circuit considered whether a claim under § 11 of the Securities Act of 1933 had to satisfy the heightened standard of Rule 9(b).[39] The court noted that to allege a violation of § 11, a plaintiff "need only

---

[34] In its opposition, XMission states that "if GWM would simply pay the confessed sum of $25 per email, there would be no need for a lawsuit." Opposition at 13 n.5. This may suggest that Global Wide has refused to confess to the liquidated damages, but such an allegation is not present in the operative pleading.
[35] 15 U.S.C. § 7704(a)(2).
[36] *Id.* at 13.
[37] Fed. R. Civ. P. 9(b).
[38] *See Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1251 (10th Cir. 1997).
[39] *Id.*

show a material misstatement or omission" and that "[l]iability against the issuer of a security is virtually absolute, even for innocent misstatements."[40] The court held that the plaintiff was not required to meet the 9(b) pleading requirements because innocent misstatements were covered under the statute.[41] The court went on to examine the allegations in the complaint and found that the allegations (such as the allegation that the defendants failed to make a reasonable investigation of the statements in their registration statement) were closer to allegations that the defendants acted negligently than fraudulently.[42] Similarly, the District of New Mexico has held that the Rule 8(a) pleading standard applies to a claim of negligent misrepresentation because a claim for negligent misrepresentation is grounded in negligence rather than intent to mislead and because fraud included elements that negligent misrepresentation did not.[43]

In this case, the heightened Rule 9(b) pleading standard seemingly applies to XMission's claim under § 7704(a)(2). XMission alleges that "none of the Defendants possessed any data, documentation, or substantiation supporting the claims in the subject lines, and the subject lines are designed merely to induce the recipient to open the email under *false pretenses*."[44] This sounds in fraud. Furthermore, an element of the claim under § 7704(a)(2) is that the email's sender have knowledge that the subject heading of a message "would be likely to mislead a recipient." In other words, XMission's claim is grounded in intent to deceive rather than negligence. As such, Rule 9(b) applies to XMission's § 7704(a)(2) claim.

---

[40] *Id.*
[41] *Id.*
[42] *See id.* at 1252.
[43] *City of Raton v. Ark. River Power Auth.*, 600 F. Supp. 2d 1130, 1141 (D.N.M. 2008).
[44] Complaint at ¶ 56 (emphasis added).

Rule 9(b)'s requirement that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake"[45] means that, to state a claim under Rule 9(b), a party must "identify the time, place, content, and consequences of the fraudulent conduct."[46] XMission argues that it has satisfied this standard because it has alleged that Global Wide sent "over 22,000 email messages" with subject headings likely to mislead a recipient between "November 30, 2015 and the date of the Complaint [March 16, 2022]."[47]

These allegations are insufficient to state a claim under Rule 9(b). Instead of identifying the "time, place, content, and consequences" of specific fraudulent conduct, XMission has generically identified over 22,000 email messages sent over a six-and-a-half-year range. This variation on collective pleading does not provide nearly enough information to meet the standard. Indeed, these allegations do not "afford the defendant fair notice of the plaintiff's claims and the factual ground upon which [they] are based"[48] and do not satisfy the heightened pleading requirements under Rule 9(b).

There is another problem with XMission's § 7704(a)(2) claim regardless of the pleading standard. As noted earlier, the statute states that it is unlawful to send an email in which, among other things, the subject heading of the message would be likely to mislead a recipient about a material fact regarding the contents or subject matter of the message.[49]

XMission's claim here appears to be different. The thrust of XMission's claim is that, on information and belief, "none of the Defendants possessed any data, documentation, or

---

[45] Fed. R. Civ. P. 9(b).
[46] *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171 (10th Cir. 2010).
[47] Opposition at 20 (citing Complaint at ¶¶ 25, 55–56, 70).
[48] *Envirocare*, 614 F.3d at 1172 (quoting *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000)) (alteration in original).
[49] 15 U.S.C. § 7704(a)(2).

substantiation supporting the claims in the [emails'] subject lines."[50] XMission has not identified any part of the statute or any case law, binding or otherwise, that imposes an affirmative obligation on email senders to maintain "data, documentation, or substantiation" supporting their emails. Instead, § 7704(a)(2) addresses liability for acting with "actual knowledge" or implied knowledge that the subject heading will mislead a reasonable recipient about the message. XMission cites *MySpace, Inc. v. The Globe.com, Inc.*[51] in support of its argument, but that case does not impose such an obligation. There, the court allowed a claim under § 7704(a)(2) where the subject headings "the new MySpace phone" and "the new phone for MySpace" implied that the defendants had some affiliation with MySpace.[52] The sender of the emails was the seller of the phones and knew that the suggested affiliation with "MySpace" in the subject heading was non-existent when it came to the "tglo" phones marketed in the messages.[53] In contrast, here XMission is essentially contending that unless Global Wide has affirmative support for any health claims in emails it has sent or participated in sending, it violates § 7704(a)(2). *MySpace* does not standard for that proposition.

      In conclusion, XMission has not met the Rule 9(b) pleading standard to state a claim under § 7704(a)(2). Additionally, XMission has not sufficiently alleged that the emails' subject headings were likely to mislead a recipient about the contents of the email or that Global Wide had knowledge that the subject headings were likely to mislead.

---

[50] Complaint at ¶ 56.
[51] No. CV 06-3391-RGK (JCx), 2007 WL 1686966 (C.D. Cal. Feb. 27, 2007).
[52] *Id.* at *6.
[53] *Id.*

## ORDER

For the foregoing reasons, Global Wide's motion to dismiss is GRANTED. Counts two and five of the complaint are dismissed without prejudice.

Signed July 20, 2022.

BY THE COURT:

_____
David Barlow
United States District Judge
